IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN MICHAEL QUINN, *et al.*,

    Plaintiffs,

vs.              No. Civ. 12-005 MCA/ACT

WILLIAM LEON YOUNG, *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

   This case is before the Court upon Defendants' Motion for Summary Judgment [Doc. 13]

by which Defendants seek summary judgment as to Defendants Melendrez, Young, Armijo,

Hamby and City of Albuquerque, and dismissal for failure to state a claim as to Defendant

Schultz. The Court has considered the motion, Plaintiffs' response, Defendants' reply, the record

in this case and the applicable law, and is otherwise fully advised.

**MOTION FOR SUMMARY JUDGMENT**

**Summary Judgment Standards**

   Rule 56(a) of the Federal Rules of Civil  Procedure provides that "[a] party may move for

summary judgment, identifying each claim . . . on which summary judgment is sought."  As our

Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if "there is no genuine issue as to any
> material fact and . . .the moving party is entitled to a judgment as a matter of law."
> A fact is "material" if, under the governing law, it could have an effect on the
> outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational
> jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). "The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Legal Standards Applicable to a Dispositive Motion Based on Qualified Immunity**

> Resolution of a dispositive motion based on qualified immunity involves a two pronged inquiry. "First, a court must decide whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right. "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations omitted). When the dispositive motion on qualified immunity is a motion for summary judgment, the Court must "construe the facts in the light most favorable to the plaintiff as the non-moving party. . . ." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).

**Background**

The Court has drawn the following facts from the parties' statements of undisputed facts. The Court has taken as true those facts which the parties agree are undisputed. Wherever the facts are disputed and the evidence is in conflict, the Court has construed the evidence in the light most favorable to Plaintiffs as the nonmovant. *Kaufman*, supra.

In July 2010, Albuquerque Police Department ("APD") Sgt. Louis Armijo devised a tactical operation plan ("sting") aimed at larcenies in the downtown area of Albuquerque. The sting was to be executed by APD's Valley Area Command. The plan for July 30, 2010 required officers conducting the sting to place a backpack containing cigarettes, beer, and a laptop computer near a downtown ATM, and then to watch the backpack to see if anyone took it. Two APD officers, Ben Melendrez and William Young, were assigned to conduct the sting. The officers were dressed in plainclothes. Officer Melendrez placed a backpack containing cigarettes, beer, and a laptop computer near an ATM at the intersection of Fourth Street and Gold Avenue in downtown Albuquerque. As Officers Melendrez and Young monitored the backpack, three persons, a man, a woman, and an elementary school-aged boy, approached the backpack. There were no other persons in the area near the backpack. The officers watched the man and the woman speak to the boy, who then picked up the backpack. The officers followed as the trio walked two blocks to Lindy's Diner at the corner of Central Avenue and Fifth Street, entered Lindy's, and seated themselves at a table. Officers Melendrez and Young followed the trio into Lindy's and sat down. They saw the man place an order. After an interval, he was served a hamburger. The officers saw the woman pick up the backpack, which had been sitting on the floor. The woman sorted through the items in backpack. At no time did the woman place any items from the backpack in her purse.[1] In the meantime, Officer Young had called dispatch and

---

[1]In their statement of undisputed facts, Defendants asserted that "[a]fter approximately an hour, Plaintiff Gonzalez took the laptop out of her purse and placed it on the table." [Doc. 13 at 5]. In their response, Plaintiffs both admit the previous statement [Doc. 22 at 11] and affirmatively state that "[a]t no time did Laverne Gonzales place any items from the backpack into her purse. The laptop in question is much too large to fit into her purse." [Doc. 22 at 12] The Plaintiffs admission to the phrase "out of her purse" appears to have been inadvertent. The Court will resolve this inconsistency in Plaintiffs favor and accept the specific averments in Ms.

confirmed that no one had reported finding a backpack in the downtown area. The officers saw the woman take out the computer and set it on the table. They saw her open it, start it, and react by turning and speaking to the man when an APD emblem appeared on the screen. Officers Melendrez and Young immediately approached the trio, identified themselves as police officers, and told the man and woman to stand with their hands behind them. Melendrez arrested the man for larceny; Young arrested the woman for larceny. At the time of the arrest, Plaintiffs had been in Lindy's for less than an hour.

**Larceny Is a Specific Intent Offense under New Mexico Law**

Under New Mexico law, larceny consists of "the stealing of anything of value which belongs to another." NMSA 1978, § 30-16-1.[2] Case law, *e.g.*, State *v. Rhea*, 86 N.M. 291 (Ct. App. 1974), as well as the Uniform Jury Instruction on larceny, NMRA 14-1601, make it absolutely clear that the taking away of another's property–*asportation*–is not larceny unless, at the time of taking, the person taking the property "intended to permanently deprive the owner of it." In other words, under New Mexico law, larceny is a *specific intent* crime. *State v. Gee*, 135 N.M. 408 (Ct. App. 2004).

**Fourth Amendment Standards**

"[A] warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists if, 'at the

_____

Gonzales' affidavit.

[2]When the value property stolen is over $2,500, but not more than $20,000, larceny is a third degree felony. Clearly, the laptop computer was included to support a charge of larceny over $2,5000.

4

moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Painter v. City of Albuquerque*, 383 Fed. Appx. 795, 798 (10th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is "a substantial probability that a crime has been committed and that a specific individual committed the crime." *St. John v. Justmann*, 771 F.2d 445 (10th Cir. 1985). "[Probable cause] is evaluated 'in relation to the circumstances as they would have appeared to prudent, cautious and trained police officers.'" *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999). Where the relevant offense includes a *mens rea* requirement over and above general criminal intent, the requirement of probable cause extends to the *mens rea*. *Manzanares v. Higdon*, 575 F.3d 1135, 1145 n.9 (10th Cir. 2009); *Painter*, 383 Fed. Appx. at 799-800 (reviewing evidence supporting probable cause as to intent to defraud)[3]; *United States v. Brown*, 234 Fed. Appx. 838 (10th Cir. 2007) (unpublished decision) (observing that "the officers had probable cause to arrest [defendant] if the facts and circumstances within their knowledge were sufficient to justify a prudent officer in believing that [defendant] was exerting unauthorized control over the rental vehicle and intended  to permanently deprive Enterprise [Rent-A-Car] of it"); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("[W]e note that the affidavit filed in support of the arrest warrant included sufficient facts to demonstrate a substantial probability that [malicious prosecution] plaintiff  committed the crime of forgery by signing Brown's name to a

---

[3]Although *Painter* is an unpublished decision, *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) (discussing role of unpublished opinions in "clearly established" analysis),  the defendants in *Painter*, as in the present case, were the City of Albuquerque and individual APD police officers.

San Juan County check without his authorization and with intent to defraud San Juan County. . . .";  "the affidavit indicated that (1) plaintiff was entrusted with administering the CI fund; (2) she converted cash from the CI fund to her own use; and (3) she did so with the intent to deprive the Sheriff's Office of the cash").

**Officers Melendrez and Young Lacked Probable Cause to Arrest for Larceny**

Because there is no dispute that the officers observed Plaintiffs carrying away the backpack, thereby satisfying the element of asportation, the question of whether the officers had probable cause to believe they had witnessed the crime of larceny, rather than an act of civic responsibility, turns upon whether Officers Melendrez and Young had reason to believe that Quinn and Gonzales possessed the *mens rea* required by the crime of larceny–*i.e.*, the specific intent to permanently deprive the owner of the backpack of his property.[4]  Significantly, the undisputed facts do not suggest that Plaintiffs acted furtively or appeared nervous when Fabian picked up the backpack. *See United State v. Welker*, 689 F.2d 167, 168 (10th Cir. 1982) (noting that defendant did not appear furtive or nervous).  The circumstances observed by Officers Melendrez and Young simply did not afford any grounds, much less objectively reasonable grounds, for imputing to Plaintiffs the requisite specific intent to permanently deprive the owner of  the backpack of his property.  "Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest." *Sherhouse v. Ratchner*,  573 F.3d 1055, 1062 (10th Cir. 2009).  A

---

[4]The Court is aware that theoretically, Officers Melendrez and Young could be entitled to qualified immunity if they had probable cause to suspect that Quinn and Gonzalez had committed *any* offense, not merely larceny.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008).  Here, larceny is the only offense that Defendants have suggested was in play at the time of the arrests.

reasonable officer would have recognized that  "[s]omeone could pick up the backpack with the intention of trying to find the owner maybe at a later time and [it] isn't necessarily something they may do immediately. . . They may take it home and find out who the computer belongs to." Abigail R. Ortiz, *APD Squelches Backpack Stings*,  Albuquerque Journal Aug. 3, 2010 (quoting City of Albuquerque Public Safety Director Darren White).  Conduct that is as consistent with lawful behavior as with theft does not give rise to probable cause.  *See Welker,* 698 F.2d at 169. The Court has considerable doubt whether under Defendants' version of the material facts a reasonable jury could find probable cause existed.  But unquestionably,  the record viewed in the light most favorable to Plaintiffs would permit a  reasonable jury to find that Officers Melendrez and Young arrested Quinn and Gonzalez without probable cause.  *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008) ("A factual dispute is . . .genuine [only] if the evidence and the inferences drawn therefrom, when viewed in the light most favorable to the nonmoving party, are such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks omitted). The Court concludes that Plaintiffs have established a genuine issue of material fact with respect to the first prong of the qualified immunity analysis.

**The Governing Law Was Clearly Established**

Turning to the second prong of qualified immunity analysis, the Court must determine whether, given the state of the law on July 30, 2010, "it would [have] be[en] clear to a reasonable officer that his conduct was unlawful under the circumstances presented."  *Herrera*, 589 F.3d at 1070 (internal quotation marks omitted).  "In the context of an unlawful arrest, [the] analysis is simple, for the law was and is unambiguous;  a governmental official must have probable cause to arrest an individual."  *Keylon*,  535 F.3d at1220 (internal quotation marks omitted).

This is not a case like *Herrera*, where the underlying state law was unsettled. 589 F.3d at 1072 (finding ambiguity in New Mexico case law construing relevant statute).   Well prior to July 30, 2010, New Mexico appellate courts had settled beyond dispute that larceny as defined in § 30-16-1 is a specific intent offense requiring that the defendant have acted with the intent to permanently deprive the owner of his property.  Thus, any reasonable officer would have recognized that Plaintiffs could not be guilty of larceny under settled New Mexico law unless, at the time they carried away the backpack,  Plaintiffs had the specific intent to permanently deprive the owner of the backpack of his property.  Indeed, the New Mexico Supreme Court, relying on federal case law, had squarely held that the Fourth Amendment requires probable cause as to the applicable *mens rea* to make a valid arrest for a specific intent crime.  *State v. Miller*, 76 N.M. 62, 67  (1966) ( "And when specific intent is an element of the crime charged, the complaint seeking an arrest warrant must indicate facts which show 'probable cause' to believe the required intent was present.").   The Court concludes that well-settled constitutional and state-law precedent would have put a reasonable officer on notice that he could not lawfully arrest for larceny unless he had probable cause to believe the suspect intended to permanently deprive the owner of his property. Plaintiffs have satisfied the second prong of the qualified immunity analysis.

**Defendant  Armijo**

Section 1983 does not recognize "a concept of strict supervisor liability."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  "[W]hen a plaintiff sues an official under . . . § 1983  for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only [1] that the official's subordinates violated the Constitution, but [2] that the official by virtue of his own conduct and state of mind did so as

8

well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) .

   Plaintiffs have met *Iqbal*'s first requirement by establishing genuine issues of material fact as to whether Sgt. Armijo's subordinates, Officers Melendrez and Young, violated Plaintiffs' clearly established Fourth Amendment rights.  Plaintiffs' case against Sgt. Armijo founders because they cannot demonstrate genuine issues of material fact as to whether Sgt. Armijo violated Plaintiffs Fourth Amendment rights "by virtue of his own conduct and state of mind."

   As the Court understands the tactical plan, the sting as conceived by Sgt. Armijo was not unconstitutional on its face.   Sgt. Armijo's tactical plan did not expressly authorize, and certainly did not require, the implementing officers to arrest suspects without probable cause.  The Court concludes that on the evidence before the Court, no reasonable jury could find that Sgt. Armijo devised  the  sting in disregard of suspects' right to be arrested only upon probable cause to believe that they had committed larceny.

   As to the implementation of the sting, the constitutionality of the sting was largely dependant on the independent exercise of discretion by Sgt. Armijo's subordinates.   Sgt. Armijo explained during his deposition that "[t]he  officer[s] should know whether they had probable cause or not or reasonable suspicion,  one or the other.  I would say reasonable suspicion first, and move on to probable cause second.  The officers know when they have probable cause and reasonable suspicion.  They're trained in that area."  [Doc. 2-1 at 9]

   There is considerable debate about the extent to which  supervisory liability survives *Iqbal*.  *Dodds*, 614 F.3d at 1198 (noting that Justices Souter, Stevens, Ginsberg, and Breyer concluded that the majority opinion in *Iqbal* "eliminated supervisory liability altogether").

Assuming for purposes of argument that pre-*Iqbal* case law survives, Plaintiffs must show that Sgt. Armijo acted with a culpable state of mind, "meaning [Sgt. Armijo] acted knowingly or with 'deliberate indifference" that a constitutional violation would occur." *Dodds*, 614 F.3d at 1196. Plaintiffs have not come forward with evidence that would permit a reasonable jury to find that Sgt. Armijo acted knowingly or with deliberate indifference to the right of suspects to be arrested only upon probable cause.  In particular, Plaintiffs have not provided the Court with evidence that Sgt. Armijo knew prior July 30, 2010 that the officers implementing the sting were making arrests without probable cause going to the specific intent requirement of larceny. In the absence of evidence about what Sgt. Armijo knew about the manner in which the sting was being implemented, a jury could only speculate as to whether Sgt. Armijo had the requisite culpable state of mind.

As to Sgt. Armijo, the Court concludes that Plaintiffs have failed to satisfy their burden of establishing genuine issue of material fact precluding summary judgment as to the first prong of the qualified immunity analysis.  The Court will grant summary judgment in favor of Sgt. Armijo.

**Defendant Hamby**

As best the Court can tell from the parties' submissions, Hamby is a spokesperson employed by the APD.  However, it is not clear exactly what she said, when she said it, and to whom she said it.  The Court notes that Defendants' statement of undisputed facts does not include even a single fact concerning Defendant Hamby.[5] The Court will deny Defendants' motion without prejudice as it pertains to Defendant Hamby, with leave to refile it in a proper

---

[5]At a minimum, the Court expects a defendant asserting the defense of qualified immunity to set out the undisputed facts showing that the defendant is a person entitled to assert the defense of qualified immunity.

format. Defense counsel is instructed to carefully read Rule 56 of the Federal Rules of Civil

Procedure and D. N.M. LR-Civ. 7 and 56 prior to refiling.

**Municipal Liability**

The defense of qualified immunity is not available to a municipality. *Christensen v. Park City Mun. Corp.*,  554 F.3d 1271, 1278 (10th Cir. 2009).  Accordingly, Defendants' motion for summary judgment as it pertains to the City of Albuquerque is governed by the general standards applicable to summary judgment motion, not the special summary judgment rules developed  in the context of qualified immunity.  That being the case, Defendants' motion is procedurally deficient as it pertains to municipal liability because it fails to identify the material facts that if undisputed entitle the City to judgment as a matter of law on Plaintiffs' municipal liability claim. Fed. Civ. P. Rule 56(c); D.N.M. LR-Civ. 56.1(b).  The Court will deny the motion without prejudice as it pertains to the City with leave to refile its motion in the proper format, after Plaintiffs have had a reasonable opportunity to conduct discovery on the municipal liability claim. Any renewed motion by the City should accept as the law of the case the Court's ruling that Plaintiffs' have made out a submissible case that  Officers Melendrez and Young arrested Quinn and Gonzales without probable cause.

**MOTION TO DISMISS**

Defendants have moved for dismissal of Chief Schultz on the ground that Plaintiffs have failed to state claim upon which relief can be granted against Chief Schultz.  [Doc. 13 at 2]

Fed. Civ. P. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss brought pursuant to Fed. Civ. P. Rule 12(b)(6), a court decides whether the allegations of the plaintiff's complaint are legally sufficient to state a claim upon which relief may be granted under the standard of Rule 8(a)(2). *Phillips v. Bell*, 365 Fed. Appx. 133, 137-38 (10th Cir. 2010) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41 (1957): a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46; internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court retired *Conley*'s test, replacing it with a new standard: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint. *Shrader v. A1 Biddinger,* 633 F.3d 1235, 1243 (10th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right of relief above the speculative level.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law

and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

As previously noted, § 1983 does not recognize "a concept of strict supervisor liability." *Fogarty*, 523 F.3d at1162. "Instead, to establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to established the alleged constitutional deprivation.'" *Brown*, 662 F.3d at1164. "A supervisor can . . . be held liable if the supervisor expressly 'authorized, supervised, or participated in conduct which caused the constitutional deprivation.'" *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007). Plaintiffs' Complaint contains the following allegations referring to Chief Schultz by name:  at all material times Chief Schultz was a member of the APD, employed as a law enforcement officer, on duty and acting under color of law [Doc. 1, ¶ 2]. Chief Schultz was a supervisor who "authorized the tactical plan in advance" [Doc. 1, ¶ 7].  The Court views the allegation that Chief Schultz "authorized" the sting as essentially a legal conclusion for purposes of *Iqbal*'s gloss on Rule 8(a).  Here, what is missing is sufficient factual development to raise the allegation that Chief Schultz "authorized" Sgt. Armijo's sting operation above a mere  "formulaic recitation" of an element of a claim for supervisory liability.

Plaintiffs' Complaint also contains allegations of conspiracy.  "Allegations of conspiracy may, indeed, form the basis of a § 1983 claim.  However, a plaintiff must allege facts that allow the Court to conclude for itself that there was an agreement and concerted action amongst the defendants.  'Conclusory allegations of conspiracy are insufficient to state a valid

§ 1983 claim'" *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). Plaintiffs'

allegation of conspiracy amounts to a bare legal conclusion. There are no facts pleaded plausibly

suggesting the requisite agreement among Defendants, including Chief Schultz, to violate

Plaintiffs' constitutional rights.

The Court will dismiss the Complaint as it pertains to Chief Schultz pursuant to Rule

12(b)(6). The dismissal will be without prejudice.

**Conclusion**

Plaintiffs have established genuine issues of material fact precluding summary judgment

on qualified immunity as to Defendants Melendrez and Young. Defendants' motion for summary

judgment is denied as to Defendants Melendrez and Young. The Motion is granted as to

Defendant Armijo. Defendants' motion for summary judgment is denied without prejudice as to

Defendants Hamby and the City of Albuquerque. Plaintiffs have failed to allege plausible claims

as to Chief Schultz. Plaintiffs' motion to dismiss for failure to state a claim is granted as to Chief

Schultz.

**WHEREFORE, IT IS THEREFORE HEREBY ORDERED** that Defendants' Motion

for Summary Judgment [Doc. 13] is **denied** as to Defendants Melendrez and Young;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgement [Doc.

13] is **granted** as to Defendant Armijo

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc.

13] is denied without prejudice as to Defendants Hamby and City of Albuquerque for the reasons

set forth above;

14

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [Doc. 13] is **granted**

as to Defendant Schultz.

**SO ORDERED this 22nd day of March, 2013.**

--------------------------------------------------------------
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE